## AUGUST KOEHLER v. J. A. BEEBER.

ERROR TO THE COURT OF COMMON PLEAS OF SOMERSET COUNTY.

Argued May 10, 1888—Decided January 7, 1889.

1. If the directors of a mutual insurance company are extravagant, incompetent, or careless of their trust, they are, nevertheless, the representatives of the policy holder and member, and their acts done within the scope of their authority are binding upon him.

2. Yet, one who has become a member and given his premium note is entitled to insist that this liability thereon shall not extend beyond his proportionate share of the expenses incurred or losses happening in the period of his membership.

3. A statement filed by the Lycoming Fire Ins. Co., under the third proviso of § 11, act of July 26, 1842, P. L. 426, which does not separate the amount received from premiums while the policy was in force from that derived from other sources, and show that the expenditures embraced were properly upon claims to which the member was liable to contrib-. ute, is insufficient to entitle the company to execution upon a lien entered under said section.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No 352 January Term 1888, Sup. Ct.; court below, No. 393 February Term 1884, C. P.

On February 15, 1884, upon a "Statement of the Condition of Company" between May 14, 1880, and October 8, 1881, purporting to be filed in accordance with the provisions of § 11 of the act of July 26, 1842, P. L. 426, verified by the affidavit of J. A. Beeber, receiver of the Lycoming Fire Insurance Company, of Muncy, Pa., judgment was entered in the court below in favor of John A. Beeber, receiver of said company, against August Koehler, "to create a lien to secure payment of a balance of $275.40 of the deposit note of August Koehler, No. 1003, given for five years insurance, commencing May 6, 1880," on a property described.

On February 25, 1884, the defendant in said judgment filed an affidavit, under § 56, act of May 1, 1876, P. L. 53, averring that the plaintiff had not filed a statement of the amount of premiums received and the manner in which the money of the company had been expended, as required by the statute; that his proportion of the loss for which the assessment was levied had been paid, and the assessment claimed, twenty per cent upon the amount of the note, was for more money than was necessary to pay the losses and necessary expenses of the company; praying the court to open said lien or judgment, and allow the defendant to make a defence. Thereupon it was ordered that the judgment be opened for the purpose prayed for, the lien thereof to remain.

At the trial of the issue (the form of which and the plead-

ings did not appear upon the paper books), on December 18, 1885, it was made to appear that the Lycoming County Mutual Insurance Company was incorporated by the act of March 20, 1840, P. L. 180, and by said act subjected to the provisions of the act of April 13, 1838, P. L. 363, incorporating the Bradford County Mutual Insurance Company, the 5th section of which provides : " Every person who shall become a member of said corporation by effecting insurance therein, shall, before he receives his policy, deposit his promissory note for such sum of money as shall be determined by the directors; a part, not exceeding ten per cent of said note, shall be immediately paid, and the remainder of said deposit note shall be payable in part or the whole, at any time when the directors shall deem the same requisite for the payment of losses by fire, and such incidental expenses as shall be necessary for transacting the business of said corporation."

Subsequently, by decree of the Court of Common Pleas of Lycoming county, on April 26, 1870, the name of the company was changed to Lycoming Fire Insurance Company.

It also was shown that on May 6, 1880, August Koehler, the defendant, had received from the plaintiff company a policy of insurance upon a certain tavern and dwelling-house, for the term of five years from that date, giving the company his premium note for $324, payable "in such portions and at such time or times as the directors of the said company may, agreeably to their act of incorporation, require." Upon this note defendant had paid two assessments.

On October 8, 1881, the company was dissolved by the decree of the Court of Common Pleas of Lycoming county, and on November 12, 1881, upon further proceedings in said court to No. 37 January Term 1882, the receiver was authorized to levy an assessment upon all outstanding premium notes, and upon those in force October 8, 1881, twenty per cent upon the amount thereof. Said assessment had been made before the entry of judgment in this case.

Upon the offer of proof of the foregoing proceedings, the decree of dissolution and of the authority for and the making of said assessment, the defendant objected, inter alia, that the plaintiff had failed and neglected to prepare and file a sufficient statement under § 11, act of July 26, 1842. The objection was overruled and offer admitted.[1]

The defendant introduced evidence upon which he asked the court to charge the jury that if they should believe that he was induced to insure with the plaintiff company on representations by John Hicks, their agent, to defendant, that it was a number one company, the best in the United States, worth $5,000,000; and that the agent, Hicks, was induced to make these representations by the company, through published advertisements on their blank policies and other papers, and that the said company was not in fact a number one, or a solvent company, but in fact an insolvent company, then the verdict must be for the defendant.

Not answered by the court.[2]

Upon the close of the evidence, the court, BAER, P. J., instructed the jury that the plaintiff was entitled to recover the amount of the premium note in suit, less the amount paid as assessments thereon, "the finding to be subject to the opinion of the court on the reserved question of law whether, on all the evidence, a judgment should be entered afterwards in favor of the defendant non obstante veredicto." The jury under these instructions returned a verdict for the plaintiff for $275.40, subject, etc. Thereupon the defendant filed a motion for judgment in favor of the defendant non obstante veredicto.

Negotiations then intervened for a settlement, and on September 1, 1886, by leave of court, a second statement was filed under § 11, act of July 26, 1842, P. L. 426, "'of the amount of premiums received and the manner in which the money of the company has been expended' between the 14th day of May, 1880, and the 8th day of October, 1881, the time covered by the said assessment filed," etc.

This statement covered seventeen pages, and embraced 1237 items, 844 of which were of amounts expended for loss and damages by fire, separately and distinctly stated with the name and residence of the assured and the amount due each, but without dates when the losses occurred, aggregating $125,380.70.

23 items were for claims paid to banks on obligations given by the company to pay losses, but without dates,          86,864.28.

42 items were for officers' salaries, with the statement that "more than half of the above officers' salaries were earned before May 14, 1880, and not before paid," aggregating,          34,462.47.

The statements of other items were made in the same manner.

On November 30, 1886, the court filed an opinion overruling the motion for judgment non obstante veredicto, and directing judgment to be entered on the verdict.[8]  The opinion closed: But as one of the objects of the issue, though not made to formally appear was also to test the right to execution, we do now, on the authority of Aycinena v. Peries, 6 W. & S. 247, enjoin the issuing of any execution, on the ground that the statement on file at time of suit and in evidence is insufficient under the law relating to the case to warrant execution, and no ruling is made on any subsequent paper filed.

Judgment was then entered upon the verdict as rendered.

On December 20, 1886, the plaintiff filed a petition which, inter alia, called the attention of the court to the second statement filed on September 1, 1886, insisting that the same fully met the requirements of the third proviso of § 11, act of July 26, 1842, and the rulings of the Supreme Court in Barker v. Beeber, 112 Pa. 216, and prayed that he be allowed to issue execution for the twenty per cent assessment, interest and costs. The answer of the defendant, in substance, denied the right of the plaintiff to have execution based upon the statement filed September 1, 1886, after the trial and verdict.

On January 27, 1888, the court filed the following opinion and decree:

After this case was argued I examined the statement filed, and was of opinion it was not sufficient to warrant execution under the special act governing the case.  On a closer examination I have come to the conclusion that I was in error as to the facts, etc., and whatever opinion I may have of the management by the officers, it is still a fact, that plaintiff was a member of a mutual company and hence affected differently from a member of a stock company.  Upon the whole, as the case now stands, I am of opinion the statement may be sufficient, and therefore on due consideration leave is granted as prayed for.[9]

Thereupon the defendant took this writ and assigned as error, inter alia:

Arguments.

1. The admission of plaintiff's offer.[1]
2. The refusal of defendant's point.[2]
8. The refusal of judgment for defendant, n. o. v.[8]
9. The order awarding execution.[9]

*Mr. W. H. Ruppel* (with him *Mr. A. H. Coffroth* and *Mr. H. L. Baer*), for the plaintiff in error:

1. The defendant had no notice of the proceedings for the dissolution of the company and authorizing the assessment of twenty per cent, in the courts of Lycoming county. If he is bound by said decree made without his knowledge, he is precluded from contesting the validity of the assessment, no matter whether made fraudulently or not, or even if he is thereby called upon to pay losses, salaries, etc., for which his note is not liable. Surely the special remedy given this company is enough, without the aid of such an extraordinary proceeding.

2. Hicks was the company's agent in procuring the insurance, and whatever representations he made at the time are binding on the company in any effort made on its part to enforce the contract. The company cannot claim the benefits of the contract by suing on the note, and at the same time repudiate the acts of its agent upon the faith of which the note was given: Sunbury F. Ins. Co. v. Humble, 100 Pa. 495.

3. After the trial and verdict, the plaintiff had had his day in court, in an attempt to enforce a collection of the receiver's assessment and had failed. He had no more right to a second trial than any other unsuccessful litigant. Moreover, the statement filed on September 1, 1886, was of itself not such as is required by the third proviso to § 11, act of July 26, 1842. That such a lumping statement of expenditures will not do has been decided in Barker v. Beeber, 112 Pa. 216. But the proviso requires the same detail of statement with regard to moneys received as it does of moneys expended. Moreover, under officers' salaries, we have $34,462.47 paid to four individuals, but we are not informed when these sums were earned, except that "more than half of the above officers' salaries were earned before May 14, 1880, and not before paid." The essential principle on which mutual insurance companies are organized is, that each member will pay his proportionate share of expenses incurred and losses which happen during the period of his membership: Peoples

F. Ins. Co. v. Hartshorne, 90 Pa. 470; Wilson v. Insurance Co., 19 Pa. 375; Susquehanna M. F. Ins. Co. v. Toy Co., 15 W. N. 307; Rosenberger v. Insurance Co., 87 Pa. 211; Susquehanna M. F. Ins. Co. v. Gackenbach, 115 Pa. 492.

*Mr. H. S. Endsley*, for the defendant in error:

1. The exemplification of the records from the Court of Common Pleas of Lycoming county was perfectly proper, pertinent and material evidence: McCormick v. Irwin, 35 Pa. 111; Westcott v. Edmunds, 68 Pa. 34; Eberts v. Eberts, 55 Pa. 110; Schuylkill & Dauphin Imp. Co. v. McCreary, 58 Pa. 317. The defendant had notice of the decree, from the receiver, by publication made according to the by-laws. A decree is conclusive against any party who had the right to appeal from it, which he did not exercise: Taylor v. Cornelius, 60 Pa. 187; Evans v. Tatem, 9 S. & R. 252. Whether the record was prima facie or conclusive evidence of the assessment, it is unnecessary to inquire, because the defendant offered no evidence to meet even a prima facie case.

2. The 56th section of the act of May 1, 1876, P. L. 53, has no application. This case arises from a lien entered under the 11th section of the act of 1842, against the real estate of the insured. The 56th section of the act of 1876 refers to a certificate by the officers of a company that an assessment has been made, and such certificate is not required to be under oath. That certificate is essentially different from the statement, under oath, of receipts and expenditures required under the act of 1842.

3. It is perfectly clear from the third proviso of § 11, act of 1842, that the statement required can be filed at any time before execution issues. It is merely a condition precedent to the right to issue execution. The first statement filed is entirely out of the case, as the plaintiff asked for no execution upon it. The point that the second statement is defective because the amount received from premiums is not itemized, is not well taken. The language of the act is, the amount of premiums received, not amounts. It is ruled in Barker v. Beeber, 112 Pa. 216, that the statement is to give the assured reasonable information *as to the expenditures* of the company. It was to meet the rulings of that case that the plaintiff prepared the second statement.

4. The principle is well settled that substantial accuracy in making assessments, and a calculation that will approximate as near as practicable and reasonable the rate of assessments required to meet the losses is sufficient: 3 Bennett's Fire Ins. Cases, 318; Buckley v. Insurance Co., 92 Pa. 501; Lycoming F. Ins. Co. v. Rought, 97 Pa. 415; Lehigh V. F. Ins. Co. v. Dryfoos, 20 W. N. 33. Morever, the presumption is that the assessment was properly made, and the defendant is bound by it, unless he can show that there was either fraud or gross mistake in the making of it: Hummel & Co's App., 78 Pa. 320; Peoples F. Ins. Co. v. Hartshorne, 90 Pa. 470.

OPINION, MR. JUSTICE WILLIAMS:

The defendant in the court below when he took his policy and gave his premium note became a member of the company. As such he had a right to attend the meetings of its members and to vote at the elections of directors. If the directors were extravagant, incompetent, or careless of their trust, they were nevertheless his representatives in the management of the affairs of the company and their acts done within the scope of their authority bind him. He should have investigated the situation of the company and the character of the management before giving his note and subjecting himself to contribution toward the payment of salaries that bore no relation to the value of services actually rendered, and to the payment of losses on outstanding risks when the income of the company was rapidly falling off. But having become a member of the company and given his premium note he is entitled to insist that his liability shall not be extended beyond his contract. He is liable to contribute to losses arising after he became a member of the company but not to those which had occurred before: The Peoples Fire Ins. Co. v. Hartshorne & Co., 90 Pa. 465.

The statement filed by the company as the basis of its right to execution against the insured, in this case, purports to give the amount of the premiums received and the manner in which the moneys of the company have been expended, between May 14, 1880, and October 8, 1881; but, whether the money or any part of it was paid upon losses arising before the liability of Koehler began, or was properly devoted to the payment of claims to which he was liable to contribute, does not appear.

It may be, for all that can be learned from the statement, that the moneys shown to have been received from premiums were applied to the payment of demands for losses sustained and adjusted long before the note of Koehler was given, and that the moneys so wrongfully appropriated would have been amply sufficient to meet all just demands upon the company arising after that time. In this particular the statement is defective. It does not show that the amount received was appropriated to the payment of demands arising after Koehler became a member of the company and gave the note upon which the assessment is levied. The exhibit of the expenditures is sufficiently detailed in all respects except as to the date of the claims to which the money was appropriated. It should be amended also in its statement of the amount of money received, by separating that received from premiums from that which was derived from other sources. When so modified it will support an execution, as it now stands it will not.

> The judgment entered in the court below is affirmed but the award of execution thereon is reversed.